UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SUSAN ROBINSON and | ) | |
| JEAN H. TROTT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-05-190-B-W |
| | ) | |
| FRANCIS WRIGHT and | ) | |
| ELIZABETH WRIGHT, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR EXTENSION OF TIME AND
MOTION FOR SUMMARY JUDGMENT**

On August 10, 2006, Francis Wright and Elizabeth Wright moved for summary judgment. Under Local Rule 7(b), Plaintiffs Susan Robinson and Jean H. Trott were required to respond by August 31, 2006, but failed to do so. On September 19, Plaintiffs filed a Motion to Extend Time, citing "excusable neglect." Because the Plaintiffs have failed to state sufficient justification for their failure to respond, the Court denies the Plaintiffs' motion for extension of time within which to answer (Docket # 13). However, even when the Defendants' statements of material fact are taken as true, there remains a genuine question of material fact; the Court therefore denies the motion for summary judgment (Docket # 6).

## I. STATEMENT OF FACTS

On December 12, 2005, Susan Robinson and Jean H. Trott filed a complaint against Francis Wright and Elizabeth Wright, claiming that the Wrights intentionally and negligently made misrepresentations about their home in East Machias, Maine and that Ms. Robinson

and Ms. Trott were thereby misled into purchasing it. *Compl.* (Docket # 1). Specifically, Ms. Robinson and Ms. Trott assert that the Wright home was "infested with toxic and/or allergenic types of mold, mold spores, and mold fragments, including high levels of Aspergillus/Penicillium-like fungus and other harmful species of mold." *Id.* ¶ 8. As a consequence, the Plaintiffs claim that they incurred remediation expenses, suffered physical and emotional symptoms, and cannot live in the house they purchased from the Wrights. *Id.* ¶¶ 20-26. They assert damages in excess of $75,000.00, including remediation expenses exceeding $88,000.00. *Id.* ¶ 21. The Wrights deny the allegations and have vigorously defended the claim.

After the discovery period lapsed, the Defendants timely moved for summary judgment on August 10, 2006. *Defs.' Mot. for Summ. J.* (Docket # 6) (*Defs.' Mot.*). The motion is grounded on the contention that, under principles of tort and contract law, the Plaintiffs are unable to establish "an essential element of their claim, namely, that [Ms. Robinson] justifiably relied on the Wrights' alleged assurances there was no mold." *Id.* at 3. The Plaintiffs did not file a timely response to the dispositive motion.

Local Rule 7(b) provides, "[u]nless within twenty-one (21) days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection." Under this Rule, the Plaintiffs were required to file an objection by August 31, 2006, but failed to do so.

On September 15, 2006, the Court sent a routine notice to the parties, informing them that the matter would be placed on the trial list, if appropriate, after the ruling on the dispositive motion. *Notice* (Docket # 12). Receipt of this notice likely provoked an existential moment in the life of Plaintiffs' counsel. He states that he "checked the file and

realized, to dismay, that no opposition had been filed to the motion for summary judgment." *Pls.' Mot. for Extension* at 1-2. After contacting defense counsel and receiving no firm position, Plaintiffs' counsel moved for extension on September 19, 2006. *Id.* at 2. The motion explains that the Defendants' motion arrived in his office while Plaintiffs' counsel had been "preparing for two back-to-back trials in Hancock County Superior Court – one a one-day non-jury trial… and the other - a seven-day jury trial…." *Id.* at 1. Following the trials, he was required to address post-trial motions and other accumulated matters, and he frankly admits "the pending motion for summary judgment was overlooked." *Id.* at 1. He asserts that his excusable neglect has not prejudiced the Defendants. *Id.* at 2.

The Defendants object to the motion to extend. *Defs.' Objection to Pls.' Mot. for Extension* (*Defs.' Objection*) (Docket # 14). They quote First Circuit law, which states that "even under the flexible standard prescribed by *Pioneer*, counsels' inattention or carelessness normally does not constitute 'excusable neglect.'" *Defs.' Objection* at 2 (citing *Dimmitt v. Ockenfels*, 407 F.3d 21, 24 (1st Cir. 2005)). They point out that the First Circuit has commented that the "stated reasons for the neglect – confusion over filing dates and busyness – hold little water." *Defs.' Objection* at 2 (citing *Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 101 (1st Cir. 2003)). They further relate a number of equitable factors, including the fact that their clients are an elderly couple with little means and the assertion that the delay will give the Plaintiffs an undue advantage in responding to the motion. *Defs.' Objection* at 3. In short, they say the Plaintiffs demonstrated neglect, but not excusable neglect.

## II. DISCUSSION

### A. Motion for Extension of Time

Federal Rule of Civil Procedure 6(b) "confers discretion on a court to grant an extension of time after the expiration of a filing deadline for 'excusable neglect.'" *Cordero-Soto v. Island Fin.*, 418 F.3d 114, 117 (1st Cir. 2005). The Supreme Court set forth the analysis for excusable neglect in *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship* saying,

> …the determination is at bottom an equitable on, taking account of all relevant circumstances... [including] the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

507 U.S. 380, 395 (1993) (discussing the excusable neglect standard under Bankruptcy Rule 9006(b)(1)); *Pratt v. Philbrook*, 109 F.3d 18 (1st Cir. 1997) (discussing the excusable neglect standard under Rule 60(b)); *Elmet Techs., Inc., v. Advanced Techs. Sys., Inc.*, No. 05-200-P-S, 2006 U.S. Dist. LEXIS 6555, *3 (D. Me. Feb. 17, 2006).

Turning first to prejudice, the First Circuit explained that, as used in this context, prejudice does not refer to a situation in which the party who would obtain a legal advantage from default is deprived of that advantage. *Pratt*, 109 F.3d at 22. Instead, "cognizable prejudice" is, "for example … lost evidence." *Id.* Here, the Defendants do not produce an argument for any cognizable prejudice.

The second factor is the length of the delay and its potential impact on the judicial proceedings. For a case that has been pending since December 12, 2005, a delay of two to three weeks, though not insignificant, does not weigh heavily in favor of a default.

The third factor, the reason for the mistake, is the "by far the most critical." *Dimmitt*, 407 F.3d at 24. In *Pioneer*, the Supreme Court "declined to limit "excusable neglect" to those circumstances caused by intervening circumstances beyond a party's

control." *Pratt*, 109 F.3d at 19. Instead, *Pioneer* concluded that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness." *Id.* (quoting *Pioneer*, 507 U.S. at 388). Here, the reason for the mistake is, by counsel's own admission, inadvertence.

The First Circuit has commented that "counsels' inattention or carelessness, such as a failure to consult or to abide by an unambiguous court procedural rule, normally does not constitute 'excusable neglect.'" *Dimmitt*, 407 F.3d at 24; *see also Stonkus*, 322 F.3d at 101; *Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 6-7 (1st Cir. 2001); *Hosp. del Maestro v. NLRB*, 263 F.3d 173, 175 (1st Cir. 2001); *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 631 (1st Cir. 2000). These cases establish that the Court would be well-within its permissible authority were it to conclude that the Plaintiffs' failure to comply with a procedural deadline does not constitute excusable neglect.

By the same token, the Court does not read the First Circuit cases as establishing an inflexible bar on the Court's discretion, in derogation of *Pioneer*. *See Pratt*, 109 F.3d at 22 (finding that the Supreme Court has "recently adopted a forgiving attitude toward instances of 'excusable neglect,'"); *Hosp. del Maestro*, 263 F.3d at 174 ("excusable neglect… is a somewhat elastic concept"). Rather, the First Circuit has repeatedly affirmed that excusable neglect motions are "committed to the district court's sound discretion," *Stonkus*, 322 F.3d at 100, and, although the reason for the mistake is the most critical factor, the analysis remains "at bottom an equitable one." *Stonkus,* 322 F.3d at 101 (citing *Pioneer* 507 U.S. 395).

Here, the Plaintiffs have given only the barest bone of an excuse. Counsel states that he completed two back-to-back trials in August: a one-day bench trial and immediately thereafter a seven-day jury trial on August 22, 2006. Tracking the calendar back, this means

that counsel began his eight day trial schedule on August 11, 2006. The Defendants' motion for summary judgment was filed on August 10, 2006. The need to prepare and the trials themselves offer some explanation as to why he initially failed to respond to the motion. However, the trials were completed on August 22, 2006, leaving counsel eight days to respond, in some fashion, to the Defendants' motion.

Counsel's excuse "hold[s] little water." *Stonkus*, 322 F.3d at 101. That counsel was preparing for or in trial cannot, standing alone, constitute excusable neglect for entirely failing to respond to court deadlines in other cases. By definition, trial lawyers try cases. If mere presence in court constituted excusable neglect for failure to respond – without more – the court system would grind to a halt whenever a lawyer tried a case. The courts, opposing lawyers, and the parties have a right to expect that trial lawyers have established office systems to respond to the practical necessity of representing more than one client and handling more than one case at the same time. This is not to say that those systems cannot break down. There are instances where the best office systems and precautions fail and matters simply fall through the cracks; it is for those instances that the excusable neglect provision exists.[1]

Moreover, the Plaintiffs acknowledge that the trials ended on August 22, 2006. Therefore, the Plaintiffs fail to offer any real explanation for the lack of a response during the eight days between the end of trial and the date the response was due. Counsel states that he

---

[1] For example, in *Gregory v. City of Calais*, an attorney failed to file a timely motion for award of fees and claimed excusable neglect. 2001 ME 82, 771 A.2d 383. She presented evidence that her office had a double tracking system in place to calendar litigation and to record when matters are due. *Id.* ¶ 4, 771 A.2d at 385. She further stated that "a previously reliable and trustworthy paralegal was ill and unable to function in that capacity". *Id.* Noting that "a proven and trusted member of the law office staff suffered unexpected personal problems, that the law firm had procedures in place ordinarily sufficient to assure timely filings, that the City was well aware that attorney fees were being sought, and that the City suffered no harm or prejudice from the late filing," the Maine Supreme Judicial Court upheld a trial court's finding of excusable neglect. *Id.* ¶ 10, 771 A.2d at 387.

was busy with post-trial motions and "other matters that had accumulated during the interim." *Pls.' Mot. for Extension* at 1. But, he offers no reason why the Defendants' motion was not one of those "other matters." If counsel wishes to prevail on a motion asserting excusable neglect, the attorney must present the court with some evidence that the neglect was excusable. Here, there is none.

It is true that there is no allegation of bad faith and that the other *Pioneer* factors weigh in Plaintiffs' favor. The Court is also mindful that the practice of trial law is increasingly deadline-driven. Commonly the best lawyers are the busiest and are required to adhere strictly to countless deadlines. It may also seem the deadlines are occasionally enforced with a degree of punctiliousness. The Court is not anxious to impose draconian substantive sanctions for procedural defaults; however, absent some colorable basis for finding excusable neglect, the Court is left with neglect alone, an excuse which, as a matter of law, is not enough.

### B. Motion for Summary Judgment

Ordinarily, the court states the facts in a summary judgment context "in the light most favorable to the nonmoving party." *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 52 (1st Cir. 2006). However, where a party has failed to oppose a motion for summary judgment, the court accepts as true "all [the moving party's] uncontested facts." *Id.* at 52-53; Loc. R. 56(c) ("The opposing statement shall admit, deny or qualify the facts...."); Loc. R. 56(f) ("Facts contained in a supporting . . . statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."). The Court, therefore, recites the facts that are, by virtue of the Plaintiffs' failure to respond, accepted as true.

The non-moving party's failure to respond, however, does not automatically entitle the movant to summary judgment. Under Federal Rule 56(e), if "the adverse party does not so respond," the Court may grant summary judgment only "if appropriate." Fed. R. Civ. P. 56(e). In these circumstances, the Court must "inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir. 2005); *see generally Stonkus*, 322 F.3d at 101-02.

The Plaintiffs' claim is based on theories of negligent or intentional misrepresentation concerning the presence of mold in the Defendants' home. *Compl.* at 4-6. In their motion, the Defendants contend that they are entitled to summary judgment because the Plaintiffs fail to demonstrate justifiable reliance, an element of negligent and intentional misrepresentation.[2] *Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979). Here, the Defendants' statement of material fact asserts that before purchase, when Ms. Robinson was in the basement of the house, she "smelled something strange that she now thinks was mold." DSMF ¶ 11. The Defendants also acknowledge that "[a]long with the smell, [Ms. Robinson] saw and pointed to a triangular black spot on the wall about which she was concerned because she 'had her antenna up' for any problems with mold" and "this spot turned out to be one of the more significant spots of mold that she says led to her problems after she bought the House." DSMF ¶¶ 12, 13. Finally, they agree that Ms. Robinson claims the "Defendants falsely told her the triangular black mark on the wall was not mold, and falsely assured her there was no mold in the House." DSMF ¶ 17. The Defendants concede that for summary

---

[2] As Jack H. Simmons, Donald N. Zillman, and David D. Gregory point out, the tort of intentional representation is bottomed on fraud. Jack H. Simmons, Donald N. Zillman, & David D. Gregory, Maine Tort Law § 11.02 (2004 Ed.) ("The action in intentional misrepresentation, more precisely the common law action in deceit and less precisely the action in fraud, has been a part of the tort law of Maine almost since statehood.").

judgment purposes, the Court must "credit [Ms. Robinson's] testimony that [the Defendants] assured her there was no problem with mold, including the black spot on the wall, but it turned out the black spot was a significant place of mold and mold was everywhere else in the house, upstairs and downstairs." *Defs.' Mot.* at 3.

Acknowledging solely for purposes of this motion that they made this false assurance to the Plaintiffs, the Defendants still claim they are entitled to summary judgment because the Plaintiffs cannot demonstrate that they relied on the Defendants' representation; to recover under intentional or negligent misrepresentation, the Plaintiffs must prove that they "justifiably relie[d] upon the representation as true and act[ed] upon it to [their] damage." *Letellier*, 400 A.2d at 376. Citing *Letellier*, the Defendants assert that the Plaintiffs either knew that the Defendants' representation was false or that its falsity was apparent to them. *Id.*; *Restatement (Second) of Torts* § 541 ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.").

The Maine Supreme Judicial Court has noted that, generally, a plaintiff "may justifiably rely on the fraudulent misrepresentation of a defendant, whether made intentionally or recklessly, without investigating the truth or falsity of the representation." *Letellier*, 400 A.2d at 376. However, as the Defendants point out, the *Restatement* qualifies this general rule by placing an onus on the Plaintiff to "use his senses" and bars recovery if he "blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Restatement (Second) of Torts* § 541, *Comment a.* The Defendants have marshaled facts to suggest that the Plaintiffs did "blindly rely," such as the Plaintiffs' prior familiarity with mold, Ms.

Robinson's training as a real estate agent, the contents of the purchase and sale agreement, and her absence of curiosity in the face of their joint susceptibility to mold. *Defs.' Mot.* at 5-9.

Despite the Defendants' effort, the Court is convinced that this case is, at heart, an argument about facts; whether the Plaintiffs knew, or whether it was obvious to them, that the Defendants were lying remains a genuine issue of material fact. There is compelling evidence from which a jury could conclude that the Plaintiffs actually knew, or that it was obvious to them, that the house was moldy. But, there is also evidence that the Plaintiffs realized this only retrospectively. *See* DSMF ¶ 11 ("[b]efore buying the House, [Ms. Robinson] was in the basement where she smelled something strange that she now thinks was mold."). Even accepting the Defendants' statements of material fact as true, whether the Plaintiffs' reliance on the false assurance of the Defendants was justified under the law remains a factual issue suitable for jury resolution. Summary judgment must be denied.

### III. CONCLUSION

Because there is no evidence of excusable neglect, the Court DENIES Plaintiffs' Motion for Extension (Docket # 13); because there is a genuine issue of material fact, the Court DENIES the Defendants' Motion for Summary Judgment (Docket # 6).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2006